UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHARLENE TALARICO, *individually*
*and on behalf of a class of all others*
*similarly situated*,

Plaintiff,

-v-

THE PORT AUTHORITY OF NEW
YORK AND NEW JERSEY,

Defendant.

18-CV-909 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Charlene Talarico has filed this putative class action against her employer, the
Port Authority of New York and New Jersey (the "Port Authority"), alleging that the Port
Authority has engaged in a practice of filming its employees' private medical examinations
without their knowledge or consent. Talarico claims that this alleged practice violates the Fourth
and Fourteenth Amendments of the U.S. Constitution, as well as the analogous guarantees of the
New York State Constitution, and she seeks individual and class-wide relief pursuant to 42
U.S.C. § 1983 ("Section 1983") and New York law. The Port Authority has moved to dismiss
certain of Talarico's claims and to strike all of her class allegations. (Dkt. No. 15.) For the
reasons that follow, the Port Authority's motion is granted in part and denied in part.

I.      **Background**

For purposes of resolving the Port Authority's motion, the Court draws its factual
recitation from the allegations in Talarico's complaint.

Charlene Talarico numbers among the Port Authority's roughly 8,000 employees. (Dkt.
No. 1 ("Compl.") ¶¶ 1–2, 13.) On August 4, 2016, after receiving a hand injury in an altercation
with a coworker, Talarico visited one of the Medical Services Offices that the Port Authority

1

provides for the exclusive use of its workers.  (Compl. ¶¶ 3, 16.)  There, she received an examination from a Port Authority physician in a private examination room.  (Compl. ¶¶ 4, 30–32.)

Following this incident, Talarico initiated legal proceedings in a New Jersey municipal court against the coworker who had injured her.  (Compl. ¶¶ 3, 34.)  During the course of discovery, the Port Authority allowed Talarico to view several video recordings, one of which showed Talarico's August 4, 2016 medical examination in its entirety.  (Compl. ¶¶ 4, 35–36.)  The recording appeared to have been taken from a wall- or ceiling-mounted camera that had been pointed directly into the examination area.  (Compl. ¶¶ 5, 37–38.)  Talarico had not previously been aware of the recording, and she had never consented to having her examination recorded.  (Compl. ¶¶ 4, 40.)

On February 1, 2018, Talarico initiated the instant lawsuit against the Port Authority on behalf of herself and a proposed class of all other employees who had been and would be subjected to "covert video surveillance" during a medical examination at any of the Port Authority's Medical Services Offices.  (Compl. ¶¶ 1, 19.)  Talarico's four-count complaint claims that the Port Authority's alleged practice of covertly filming its employees' medical examinations without their consent violates the guarantees against unreasonable searches enshrined in the Fourth Amendment of the U.S. Constitution (Count One) and Article I, § 12, of the New York State Constitution (Count Three), and that the practice also violates the privacy guarantees of the Fourteenth Amendment of the U.S. Constitution (Count Two) and Article I, § 6, of the New York State Constitution (Count Four).  (Compl. ¶¶ 42–60.)  Talarico pursues her federal claims by way of Section 1983, a remedial federal civil-rights statute, and she pursues her

state-law claims directly under the New York State Constitution.  (*Id.*)  In addition to class-wide

relief, Talarico seeks compensatory and punitive damages on her own behalf.  (Compl. ¶ 26.)

On March 27, 2018, the Port Authority moved to dismiss or strike several of Talarico's

claims.  (Dkt. No. 15.)  Specifically, the Port Authority argues that Talarico's Section 1983

claims, as well as her claim for punitive damages, must be dismissed in their entirety for failure

to state a viable legal claim.  (Dkt. No. 18 at 4–6, 20.)  To the extent that Talarico *has* stated a

claim under federal law, the Port Authority further argues that her state-law claims must be

dismissed in light of the available federal remedy.  (Dkt. No. 18 at 6–8.)  Finally, the Port

Authority moves to dismiss or strike all of Talarico's class claims.[1]  (Dkt. No. 18 at 8–19.)

The Court now turns to the merits of the Port Authority's motion.

## II.      Legal Standard

### A.      Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss the

allegations against it for "failure to state a claim upon which relief can be granted."  Fed. R. Civ.

P. 12(b)(6).  When considering a Rule 12(b)(6) motion, a court must "assum[e] that all the

allegations in the complaint are true (even if doubtful in fact)" and ask whether those allegations

"raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

555 (2007).  The court will answer in the affirmative only if the complaint "contain[s] sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*

---

[1] The Port Authority also requests that its time to answer any remaining claims be extended pursuant to Federal Rule of Civil Procedure 12(a)(4)(A) until after the Court's disposition of its motion to strike and for partial dismissal.  (Dkt. No. 18 at 20–21.)  That request is granted.  *See Lombardo v. Dr. Seuss Enters., L.P.*, No. 16 Civ. 9974, 2017 WL 1378413, at *3 (S.D.N.Y. Apr. 7, 2017) (recognizing that a timely motion to dismiss some claims extends the time to answer all claims).

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  And the court will find a

claim to be facially plausible where, "draw[ing] on its judicial experience and common sense,"

the court can infer from the facts alleged in the complaint "more than the mere possibility" that,

if those facts are true, the defendant has committed actionable misconduct.  *Id.* at 679.

> **B.      Motion to Strike Class Claims**

Federal Rule of Civil Procedure 23(c)(1)(A) provides that a court must decide whether to

certify a class action "[a]t an early practicable time" after a putative class action is brought.  Fed.

R. Civ. P. 23(c)(1)(A).  Because a decision in the negative might be practicable even prior to

discovery, Rule 23(d)(1)(D) allows a court to require that a complaint "be amended to eliminate

allegations about representation of absent persons and that the action proceed accordingly."  Fed.

R. Civ. P. 23(d)(1)(D); *see also Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 462 (S.D.N.Y.

2013) (recognizing that "a party may move to strike class claims even before discovery").[2]

In this Circuit, motions to strike class claims are "disfavored" because they "require[] a

reviewing court to preemptively terminate the class aspects of . . . litigation, solely on the basis

of what is alleged in the complaint and before plaintiffs are permitted to complete the discovery

to which they would otherwise be entitled on questions relevant to class certification."  *Kassman*,

925 F. Supp. 2d at 462 (omission in original) (quoting *Chen-Oster v. Goldman, Sachs & Co.*, 877

F. Supp. 2d 113, 117 (S.D.N.Y. 2012)).  Such a motion, however, "may be entertained 'if the

---

[2] The Port Authority's motion to strike also invokes Rule 12(f), which authorizes a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Because Rules 23(c)(1)(A) and 23(d)(1)(D), which deal specifically with class claims, are more obviously applicable here, and because the Port Authority never argues that a Rule 12(f) analysis would differ from an analysis under the class-claim rules, the Court analyzes the motion to strike under Rules 23(c)(1)(A) and 23(d)(1)(D).

inquiry would not mirror the class certification inquiry and if resolution of the motion is clear.'"

*Id.* (quoting *Davito v. AmTrust Bank*, 743 F. Supp. 2d 114, 115 (E.D.N.Y. 2010)).

III.   **Discussion**

The Court first considers the Port Authority's argument that certain of Talarico's claims

must be dismissed for failure to state a viable legal claim and then turns to the Port Authority's

motion to strike Talarico's class claims from her complaint.

A.      **Motion to Dismiss**

The Port Authority argues that certain of Talarico's claims fail to state plausible grounds

for relief and so must be dismissed pursuant to Rule 12(b)(6).  First, it argues that Talarico has

failed to state a Section 1983 claim as to any plaintiff, or at least as to any plaintiff other than

Talarico herself.  (Dkt. No. 18 at 4–6, 8–12.)  Second, to the extent that any of Talarico's

Section 1983 claims survive, the Port Authority argues that the corresponding state-law claims

must be dismissed in light of the available federal remedy.[3]  (Dkt. No. 18 at 6–8.)  Finally, the

Port Authority argues that any claim for punitive damages must be dismissed as a matter of law.

(Dkt. No. 18 at 20.)  The Court addresses each argument in turn.

1.      **Section 1983 Claims (Counts One and Two)**

Where a plaintiff raises a Section 1983 claim against a municipality—or a governmental

entity such as the Port Authority—rather than an individual, the plaintiff can recover for only

---

[3] The Port Authority also argues that all state-law claims of all putative class members
other than Talarico herself must be dismissed pursuant to Rule 12(b)(1) for lack of subject-matter
jurisdiction because those putative class members have not complied with the state-law statutory
requirements for overcoming the Port Authority's default immunity to suit.  (Dkt. No. 18 at 16–
19.)  Because the Court concludes that the state-law claims must be dismissed for independent
reasons, *see infra* Section III.A.2, the Court need not consider this argument.  *Cf. Myers v. Hertz
Corp.*, 624 F.3d 537, 551–52 (2d Cir. 2010) (declining to address a possible jurisdictional defect
with certain putative class claims where class certification as to those claims had appropriately
been denied for non-jurisdictional reasons).

those injuries that result from "a governmental custom, policy, ordinance, regulation, or decision." *Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 737 (S.D.N.Y. 2012) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)).  Accordingly, to state a Section 1983 claim against the Port Authority, Talarico must plausibly allege "(1) an official policy or custom that (2) causes [her] to be subjected to (3) a denial of a constitutional right." *Id.* (quoting *Batista*, 702 F.2d at 397).  The Port Authority contends that Talarico has not plausibly alleged (1) the existence of an official policy or custom, (2) a Fourth Amendment violation as to any plaintiff other than herself, or (3) any Fourteenth Amendment violation as to any plaintiff.

### a.   Official Policy or Custom

An official policy or custom capable of supporting municipal liability under Section 1983 can consist of, among other things, "a formal policy officially endorsed by the municipality" or "a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials." *Guzman v. United States*, No. 11 Civ. 5834, 2013 WL 5018553, at *3 (S.D.N.Y. Sept. 13, 2013) (quoting *Saenz v. Lucas*, No. 07 Civ. 10534, 2008 WL 2735867, at *5 (S.D.N.Y. July 9, 2008)).  Generally speaking, "[a] single incident alleged in a complaint . . . will not suffice to raise an inference of the existence of a custom or policy." *Dyno v. Vill. of Johnson City*, 240 F. App'x 432, 434 (2d Cir. 2007) (summary order) (quoting *Dwares v. New York*, 985 F.2d 94, 100 (2d Cir. 1993)).

Here, the Port Authority argues that Talarico has alleged only "a single incident of video surveillance" (Dkt. No. 18 at 4), which is insufficient to give rise to an inference of an official policy, *see Dyno*, 240 F. App'x at 434.  Of course, the complaint alleges that the Port Authority has a "policy, practice, or custom of covertly video surveilling employee medical examinations."

(Compl. ¶ 6.)  But the Port Authority argues that this allegation is a mere "conclusory statement" devoid of the factual specificity required to survive a motion to dismiss.  (Dkt. No. 18 at 4.)

The Court is not persuaded.  Certainly, "[t]o state there is a policy does not make it so." *Guzman*, 2013 WL 5018553, at *5 (alteration in original) (quoting *Betts v. Shearman*, No. 12 Civ. 3195, 2013 WL 311124, at *16 (S.D.N.Y. Jan. 24, 2013)).  In this case, though, the factual allegations surrounding the single known instance of surveillance "tend[] to support, at least circumstantially, . . . an inference" of a more widespread practice.  *Lopez v. City of New York*, No. 15 Civ. 1650, 2017 WL 213243, at *4 (S.D.N.Y. Jan. 10, 2017) (quoting *Bradley v. City of New York*, No. 08 Civ. 1106, 2009 WL 1703237, at *3 (E.D.N.Y. June 18, 2009)).  Specifically, Talarico alleges that she was covertly videotaped by a camera that appeared to be "a fixture in [an] examination room" (Compl. ¶ 38) used "solely for the provision of medical services to [the Port Authority's] employees" (Compl. ¶ 16).  And the complaint nowhere suggests that the conduct of Talarico's examination was in any way unusual.  If, as is alleged, the Port Authority used an installed camera to videotape one run-of-the-mill medical examination, it is plausible to infer that the Port Authority regularly recorded others too.  If anything, it is the Port Authority, not Talarico, that asks the Court to draw an implausible inference: that the video camera somebody had taken the trouble to set up as a permanent installation in a Port Authority examination room was not generally being used to record what happened in that room and that the fact of Talarico's examination having been recorded—rather than an indication that the camera was being used to perform the function cameras typically perform—was simply an inexplicable outlier.

Perhaps recognizing the weakness in its main argument, the Port Authority shifts gears in its reply brief.  There, it argues that even if Talarico has plausibly alleged that *someone*—perhaps

a rogue employee—was habitually recording the private examinations that took place in the Port

Authority's medical offices, the complaint's allegations fail to plausibly support an inference that

the Port Authority itself approved, or even knew of, this practice.  (Dkt. No. 28 at 1–2.)

        This argument, too, strains credulity.  It is certainly plausible to infer that an individual

with sufficient access to install a permanent video camera in a non-public area within the Port

Authority's premises (*see* Compl. ¶ 31) acted with the Port Authority's approval.  Moreover, the

complaint makes clear that the Port Authority was aware of the footage being produced:  after

all, it was the Port Authority that provided Talarico with the recording of her examination in the

first place.  (Compl. ¶¶ 35–36.)  It is thus plausible that discovery could turn up evidence that the

Port Authority "endorsed" or at least had "constructive knowledge" of a practice of filming its

employees' private examinations, *Guzman*, 2013 WL 5018553, at *3 (quoting *Saenz*, 2008 WL

2735867, at *5), and Talarico has therefore adequately alleged an official policy or custom.

### b.    Constitutional Violation

        The Port Authority next argues that Talarico's Section 1983 claims must be dismissed, at

least in part, for failing to plausibly allege that any "constitutional violation actually occurred" as

a result of any alleged policy or custom.  (Dkt. No. 18 at 5.)  Specifically, the Port Authority

argues that the complaint fails to plausibly allege that any plaintiff other than Talarico suffered a

Fourth Amendment violation (Dkt. No. 18 at 8–10), or that *any* plaintiff suffered a Fourteenth

Amendment violation (Dkt. No. 18 at 10–12; Dkt. No. 28 at 6 n.4).

### i.    Fourth Amendment (Count One)

        The Fourth Amendment of the U.S. Constitution—enforceable against state governments

by way of the Fourteenth Amendment's Due Process Clause, *see Mapp v. Ohio*, 367 U.S. 643,

655 (1961)—protects against "unreasonable searches and seizures," U.S. Const. amend. IV.  For

Fourth Amendment purposes, the government conducts a search when it "intrudes upon an area where [an individual] has a reasonable expectation of privacy." *DeVittorio v. Hall*, 589 F. Supp. 2d 247, 254 (S.D.N.Y. 2008). But the mere installation of a video camera—even in a private area—does not constitute a search unless the camera "record[s] . . . images" and thereby "convey[s] . . . private information." *Id.* at 257; *see also United States v. Karo*, 468 U.S. 705, 712 (1984) (declining to hold that "potential, as opposed to actual, invasions of privacy constitute searches for purposes of the Fourth Amendment").

The Port Authority never disputes that Talarico has adequately alleged that she herself has suffered a Fourth Amendment violation. And with respect to the class claims, the Port Authority never disputes the plausibility of the complaint's contentions that Port Authority employees have a reasonable expectation of privacy in their medical examinations and that the covert surveillance of such examinations unreasonably violates that expectation. Instead, the Port Authority argues only that the complaint never alleges facts from which the Court can infer that any employee other than Talarico ever actually had his or her medical examination recorded or viewed. (Dkt. No. 18 at 8–9.) Thus, the Port Authority argues, the complaint fails to plausibly allege that any employee other than Talarico ever fell subject to a Fourth Amendment search—reasonable or otherwise—in the first place.

The Court disagrees. As explained above, the facts alleged in the complaint make it plausible that the Port Authority regularly recorded its employees' medical examinations. Those same factual allegations, if true, therefore establish "more than the mere possibility," *Ashcroft*, 556 U.S. at 679, that, as the complaint contends, "the Port Authority filmed . . . other employees' medical exams without their knowledge or consent" (Compl. ¶ 41). Accordingly, to the extent

that the type of covert surveillance alleged here violates the Fourth Amendment, the Court easily concludes that Talarico has plausibly alleged that she was not alone in suffering such a violation.

### ii.   Fourteenth Amendment (Count Two)

The Second Circuit has held that "[t]he Fourteenth Amendment's due process clause . . . protects individuals . . . from arbitrary [governmental] intrusions into their medical records," *Hancock v. Cty. of Rensselaer*, 882 F.3d 58, 65 (2d Cir. 2018), and from the "disclosure of [related] personal matters," *Doe v. City of New York*, 15 F.3d 264, 267 (2d Cir. 1994) (quoting *Whalen v. Roe*, 429 U.S. 589, 599 (1977)).  Determining whether any given intrusion constitutes a substantive due-process violation requires a court to balance an "individual's interest in privacy" against "the government's interest in breaching it." *Hancock*, 882 F.3d at 65.  Where, as here, the alleged intrusion represents an "executive action that does not involve penological interests," it violates due process only if it "was so 'arbitrary' as to 'shock the conscience.'" *Id.* at 66 (quoting *O'Connor v. Pierson*, 426 F.3d 187, 203 (2d Cir. 2005)).  And "whether executive action shocks the conscience," in turn, "depends on the state of mind of the government actor and the context in which the action was taken." *O'Connor*, 426 F.3d at 203.

The Port Authority argues that the Fourteenth Amendment claim here must be dismissed because (1) it is duplicative of Talarico's Fourth Amendment claim (Dkt. No. 18 at 9) and (2) Talarico has failed to plausibly allege the Port Authority acted with a sufficiently culpable mental state to violate substantive due process.[4]  (Dkt. No. 28 at 5–6.)

---

[4] The Port Authority also argues that the complaint fails to plausibly allege a Fourteenth Amendment violation as to any putative class member other than Talarico because it contains "no facts alleging that any covert surveillance" of anybody but Talarico "was viewed by or disclosed to anyone."  (Dkt. No. 18 at 11.)  The Court rejects this argument for the same reasons it rejected the Port Authority's comparable Fourth Amendment argument.  As the Court has explained, the complaint's allegations easily create a plausible inference that the Port Authority recorded multiple employees' medical examinations.

The Court first considers the Port Authority's argument that the Fourteenth Amendment claim here must be dismissed as duplicative.  The Supreme Court has held that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'"  *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion) (quoting *Graham v. Conner*, 490 U.S. 386, 395 (1989)).  Here, the Port Authority argues, the challenged policy of surveillance can be analyzed under the Fourth Amendment, and so the Fourteenth Amendment due-process claim based on the same conduct must be dismissed.

As the Second Circuit has recognized, however, "[t]he [Fourteenth Amendment] right to maintain the confidentiality of medical information is . . . distinct from the right to privacy protected by the Fourth Amendment."  *Powell v. Schriver*, 175 F.3d 107, 112 n.3 (2d Cir. 1999).  After all, "[u]nlike in the Fourth Amendment context, the substantive due process inquiry does not require an individual to establish the reasonability of their particular interest in privacy." *Hancock*, 882 F.3d at 66.  If this Court ultimately were to reject Talarico's Fourth Amendment claim based, for example, on a finding that Port Authority employees enjoy no reasonable expectation of privacy in their employer's medical offices, Talarico's substantive due-process claim could still be viable.  *Compare Tenenbaum v. Williams*, 193 F.3d 581, 599 (2d Cir. 1999) (dismissing a substantive due-process claim as duplicative where the claim was based on conduct held to be a Fourth Amendment seizure and search *at the summary judgment stage*), *with Medeiros v. O'Connell*, 150 F.3d 164, 169 (2d Cir. 1998) (rejecting the argument that a substantive due-process claim was duplicative where that claim was based on conduct held *not* to

be a Fourth Amendment seizure *at the summary judgment stage*).  At best, then, it would be premature to hold at present that Talarico's Fourteenth Amendment claim is duplicative.

Having so concluded, the Court turns to the Port Authority's alternative argument:  that the complaint fails to plausibly allege that the Port Authority acted with the sort of culpable mental state necessary to support a substantive due-process claim.  To be sure, the Port Authority is correct that the complaint nowhere alleges that the challenged recordings stemmed from "an intent to injure or spite."  (Dkt. No. 18 at 11.)  But while "'malicious and sadistic' abuses of power by government officials, intended to 'oppress or to cause injury' and designed for no legitimate government purpose, '*unquestionably* shock the conscience,'" *Velez v. Levy*, 401 F.3d 75, 94 (2d Cir. 2005) (emphasis added) (quoting *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 252 (2d Cir. 2001)), the Port Authority has identified no authority holding that malicious actions designed to inflict injury are the *only* governmental abuses capable of inspiring such shock.  To the contrary, in the context relevant here—that of governmental intrusions into medical confidentiality—the Second Circuit has indicated that "less culpable mental states" than malice can support Fourteenth Amendment liability where "a context-specific balancing" reveals state action to be "egregious" in light of the privacy interest it violates.  *Hancock*, 882 F.3d at 66.

The Court acknowledges that the Port Authority may ultimately be able to demonstrate that its covert collection of its employees' private medical information is handled in such a way, and is supported by such necessity, that it is justifiable.  But it is also plausible to anticipate that the evidence unearthed in discovery may reveal a policy that is so unreasoned, and that reflects such gross indifference to the private nature of the information it might turn up, that it shocks the conscience.  Given the "numerous factual issues still to be resolved" regarding the contours of and reasons for the Port Authority's alleged practice of secretly filming its employees' medical

examinations, *Doe*, 15 F.3d at 270, the Court concludes that Talarico is entitled to discovery on her Fourteenth Amendment claims.

### 2.      State-Law Claims (Counts Three and Four)

According to Talarico, the Port Authority's alleged conduct violates not only the U.S. Constitution's Fourth and Fourteenth Amendments, but also the New York State Constitution's analogous provisions.  *See* N.Y. Const. art. I, § 6 (guaranteeing "due process of law"); *id.* art. I, § 12 (protecting against "unreasonable searches and seizures").  Because New York "has no enabling statute" like Section 1983 that "permit[s] damage actions for the deprivation of [state] constitutional rights," Talarico seeks to proceed directly under "the [New York] Constitution itself."  *Brown v. State*, 89 N.Y.2d 172, 186 (1996).  In doing so, she necessarily relies on the "narrow remedy" the New York State Constitution offers in certain contexts where "Congress and the [U.S.] Supreme Court" have failed to "provide appropriate protection against official misconduct at the State level."  *Id.* at 192.  The Port Authority, however, argues that this remedy is foreclosed if, as the Court has now concluded, Talarico can pursue Section 1983 claims that are essentially identical to her claims under the New York State Constitution.  (Dkt. No. 18 at 6–8.)

The Court agrees that Talarico's state-law claims must be dismissed.  After all, "[d]istrict courts in this circuit have consistently held that there is no private right of action under the New York State Constitution where, as here, remedies are available under [Section] 1983."  *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 520 (S.D.N.Y. 2013) (quoting *Campbell v. City of New York*, No. 09 Civ. 3306, 2011 WL 6329456, at *5 (E.D.N.Y. Dec. 15, 2011)).  Accordingly, where a complaint alleges no theories of liability that are cognizable exclusively under the New York State Constitution, any claims brought under the state constitution are ordinarily dismissed.  *See, e.g.*, *Sullivan v. Metro. Transit Auth. Police Dep't*, No. 13 Civ. 7677, 2017 WL 4326058, at *10

(S.D.N.Y. Sept. 13, 2017); *Bradshaw v. City of New York*, No. 15 Civ. 9031, 2017 WL 325260, at *7 (S.D.N.Y. Jan. 23, 2017); *Tchatat v. City of New York*, No. 14 Civ. 2385, 2015 WL 5091197, at *17 (S.D.N.Y. Aug. 28, 2015).

Talarico sees things differently.  According to her, "[i]t may be" that the New York State Constitution offers broader protections than the U.S. Constitution "with respect to the issues in this case."  (Dkt. No. 25 at 10.)  But while Talarico is certainly correct that New York "has adopted independent standards under the State Constitution" in certain areas, *People v. P.J. Video*, 68 N.Y.2d 296, 304 (1986), she offers no case law or other authority suggesting that the specific conduct alleged here falls within any of those areas.  Absent any such indication, the Court concludes that Talarico's state-law claims rise or fall with her Section 1983 claims.  *See id.* at 304 (identifying a "presumption" that the scope of the New York State Constitution's guarantee against unreasonable searches and seizures "conforms with that found in the [Fourth] Amendment" (second quoting *People v. Johnson*, 66 N.Y.2d 398, 406 (1985))); *Febres v. City of New York*, 238 F.R.D. 377, 392 (S.D.N.Y. 2006) ("The New York State [C]onstitution's guarantees of . . . due process are virtually coextensive with those of the federal Constitution.").

Because Section 1983 offers an adequate remedy to redress any injury inflicted by the specific conduct alleged here, then, the New York State Constitution does not itself provide a cause of action.  Talarico's state-law claims are therefore dismissed.

### 3.      Punitive Damages Claims

Finally, the Port Authority argues that Talarico's punitive-damages claims must be dismissed because governmental entities such as the Port Authority are immune from such damages.  (Dkt. No. 18 at 20.)  Talarico makes no argument to the contrary, and this Court observes that "the Third Circuit and the overwhelming majority of district courts within this Circuit have held" that "punitive damages are not available against the Port Authority."  *Urbina*

*v. Port Auth. of N.Y.*, No. 15 Civ. 8647, 2017 WL 3600424, at *6 (S.D.N.Y. Aug. 18, 2017).  The Court therefore grants the unopposed motion to dismiss Talarico's punitive-damages claims.

### B.    Motion to Strike Class Claims

Having concluded that Talarico is entitled to proceed solely on her Section 1983 claims, the Court now considers the Port Authority's motion to strike Talarico's class allegations insofar as it relates to these claims.

The complaint here seeks class treatment under Federal Rules of Civil Procedure 23(b)(1) and 23(b)(3).  (Compl. ¶ 19.)  Rule 23(b)(1) allows for class treatment in cases where multiple individual proceedings could prejudice the interests of non-party class members or impose inconsistent standards of conduct on the defendant.  Fed. R. Civ. P. 23(b)(1).  And Rule 23(b)(3) allows for class treatment where "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Finally, any class action—whether under Rule 23(b)(1) or 23(b)(3)—must satisfy four preconditions set out in Rule 23(a):  (1) the class must be "so numerous that joinder of all members is impracticable"; (2) there must be "questions of law or fact common to the class"; and the class representatives must (3) have claims typical of the class claims and (4) be able to "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).

In support of its motion to strike Talarico's class claims, the Port Authority argues that Talarico's allegations fail to sufficiently plead that the requirements of Rules 23(a) and 23(b)(3) have been satisfied.[5]  (Dkt. No. 18 at 12–16.)  For example, the Port Authority points out that the

---

[5] The Port Authority also claims that Rule 23(b)(1) is "inapplicable" here because "Plaintiffs seek only monetary damages" (Dkt. No. 18 at 15 n.2), and actions that seek only "individualized monetary [damages] belong in Rule 23(b)(3)," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011).  The complaint, though, requests that the Court award such relief as it

complaint fails to allege how many other employees' medical examinations were videotaped, describe the circumstances under which any other videotapes were made, or establish that the circumstances under which the videotape of Talarico's examination was viewed were typical of the circumstances under which any other videotapes may have been viewed.  (*Id.*)

These arguments, though, "mirror the class certification inquiry" and so are premature. *Kassman*, 925 F. Supp. 2d at 462 (quoting *Davito*, 743 F. Supp. 2d at 115).  After all, the issues of numerosity, commonality, typicality, adequacy, and predominance that the Port Authority raises in connection with its motion to strike are "the same ones that would be decided in connection with determining the appropriateness of class certification under Rules 23(a) and 23(b)." *Id.* (quoting *Rahman v. Smith & Wollensky Rest. Grp., Inc.*, No. 06 Civ. 6198, 2008 WL 161230, at *3 (S.D.N.Y. Jan. 16, 2008)).  Tellingly, most of the cases upon which the Port Authority relies dismiss class claims only at a stage of the litigation in which the proponent of certification is expected to adduce evidence in support of class treatment.  *See, e.g.*, *Demarco v Edens*, 390 F.2d 836, 845 (2d Cir. 1968) (trial); *Spann v. AOL Time Warner, Inc.*, 219 F.R.D. 307, 315–24 (S.D.N.Y. 2003) (motion for class certification); *Davidson v. Yeshiva Univ.*, 555 F. Supp. 75, 77–78 (S.D.N.Y. 1982) (same); *O'Connell v. Teachers Coll.*, 63 F.R.D. 638, 639–40 (S.D.N.Y. 1974) (same); *Male v. Crossroads Assocs.*, 320 F. Supp. 141, 150 (S.D.N.Y. 1970) (motion for preliminary injunction on behalf of class).

Of course, a motion to strike class claims at the pleading stage can succeed where the claims fail to state a plausible entitlement to relief on behalf of the putative class members.  *See, e.g.*, *Kassman*, 925 F. Supp. 2d at 469–70 (striking state-law class claims brought on behalf of

---

"deems just and proper."  (Compl. at 10.)  To the extent that Talarico does seek class-wide equitable relief, the Port Authority makes no argument as to why the complaint is insufficient to satisfy the specific requirements of Rule 23(b)(1).

out-of-state plaintiffs); *PFT of Am., Inc. v. Tradewell, Inc.*, No. 98 Civ. 6413, 1999 WL 179358, at *1 (S.D.N.Y. Mar. 31, 1999) (striking class claims where the complaint contained "no facts from which it [could] be determined that there is any basis other than speculation as to whether there are other members of the class"); *Goldberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 97 Civ. 8779, 1998 WL 321446, at *9 (S.D.N.Y. June 18, 1998) (rejecting class claims supported only by "conclusory allegations"). As the Court has concluded in Section III.A.1.b, *supra*, though, the complaint here does plausibly allege that putative class members other than Talarico have a right to relief under Section 1983. Therefore, to the extent that the Port Authority argues that Talarico's class allegations should be struck for failure to articulate more than the sort of "conclusory" claims that are properly addressed at the pleadings stage, that argument fails.

The Court therefore denies the Port Authority's motion to strike Talarico's class claims, albeit without prejudice to any arguments the Port Authority may wish to renew at the class-certification stage.

## IV. Conclusion

For the foregoing reasons, the Port Authority's partial motion to dismiss is GRANTED IN PART and DENIED IN PART. Specifically, the motion is granted with respect to all state-law claims (Counts Three and Four) and all claims for punitive damages. In all other respects, the motion is denied. As to the remaining claims (Counts One and Two), the Port Authority's motion to strike the class allegations is DENIED, and the Port Authority's motion for an extension of time to respond is GRANTED.

The Port Authority shall file its answer to the remaining claims within 14 days after the date of this opinion and order.

The Clerk of Court is directed to close the motion at Docket Number 15.

SO ORDERED.

Dated: February 12, 2019
New York, New York

_____
J. PAUL OETKEN
United States District Judge