UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

CHARLENE TALARICO, individually and on behalf
of a class of all others similarly situated;                                    1:18-CV-00909 JPO

                                   Plaintiff(s),          **STATEMENT OF MATERIAL FACTS PURSUANT TO RULE 56.1**

        —against—

THE PORT AUTHORITY OF NEW YORK AND
NEW JERSEY,
                               Defendant.
------------------------------------------------------------------------X

      Defendant, The Port Authority of New York and New Jersey (the "Port Authority"), by its attorney, The Port Authority Law Department, state pursuant to L. Civ. Rule 56.1(a) the following material facts as to which they contend there is no genuine issue to be tried:

      <u>**Procedural Posture and the Parties**</u>

      1.      Plaintiff Charlene Talarico ("Plaintiff") served a Notice of Claim on the Port Authority on November 30, 2017. *See* Declaration of Sandy Milord, Esq., dated May 3, 2021 Milord Declaration ("Milord Dec")., Ex. A.

      2.      On February 1, 2018, Plaintiff filed a Complaint in the Southern District of New York against the Port Authority. *See* Milord Dec., Ex. B.

      3.      Plaintiff's Complaint alleges Defendant violated 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the United States Constitution, and the Constitution of the State of New York. *See* Milord Dec., Ex. B.

4.      Defendants filed an Answer to the Complaint on February 26, 2019 denying the salient allegations. *See* Milord Dec., Ex. C.

5.      At all times relevant hereto, the Port Authority was and is a body corporate and politic, created by Compact between the states of New York and New Jersey and recognized and endorsed by the Congress of the United States. See 1921 N.Y. Laws, Ch. 154; 1921 N.J. Laws, Ch. 151; 42 State 174; N.Y. McK. Unconsol. L., §§6404, 6631; Milord Dec., Ex. C, ¶8.

**Incident**

6.      Plaintiff worked as a senior administrative secretary within the Port Authority Technical Center within the Chief Security Office. *See* Milord Dec., Ex. D, p. 8:2-10.

7.      In 2011, Plaintiff worked for the Port Authority's Tunnels, Bridges and Terminals Department at the Lincoln Tunnel. *See* Milord Dec., Ex. D, p. 20:1-19.

8.      In June of 2016, Plaintiff claims she was forced out of work by various Port Authority employees. *See* Milord Dec.*,* Ex. D., p. 13:3-21.

9.       Plaintiff claims to have written a letter to superiors about her experience. *See* Milord Dec.*,* Ex. D., p. 22:1-20.

10.      Plaintiff claims that following these complaints she was sent to the Port Authority's Office of Medical Services ("OMS") at the Journal Square Transportation Center to meet with a Port Authority psychologist. *See* Milord Dec*.,* Ex. D., p. 23:4-24.

11.      Thereafter, Plaintiff was sent to OMS offices two additional times to meet with Port Authority psychologists. *See* Milord Dec.*,* Ex. D., p. 24:5-25.

12.      Plaintiff had complaints about the rearrangement of her workspace cubicle which Plaintiff alleged was a source of anxiety. *See* Milord Dec.*,* Ex. D., p. 28:4-9.

13.     Plaintiff returned to work on August 3, 2016 and met with supervisors in order to be cleared to work on August 4, 2016. *See* Milord Dec., Ex. D., p. 32:3-9.

14.     During the meeting, Plaintiff alleges a disagreement ensued wherein her cellphone was removed from Plaintiff's hand *See* Milord Dec., Ex. D., p.39:1-25.

15.     Plaintiff attempted to bring criminal charges against one of the supervisors for assault for taking her cellphone during her August 3, 2016 meeting. *See* Milord Dec., Ex. D., p. 40:10-17.  This case was later dismissed by the Union City Municipal Court in Weehawken, New Jersey, Hudson County on April 9, 2018, following a bench trial. *See State v. Dianne Ehler*, Docket No. S-2016-000352.

16.     Thereafter, Plaintiff went to the Port Authority Police Department to complain about injuries to her hand and indicated she wanted to go to OMS.  *See* Milord Dec., Ex. *D.,* p. 39:20-43:6.

17.     On August 3, 2016, Plaintiff went to the Port Authority's OMS located at 233 Park Avenue South, New York, New York, where she met with Port Authority medical staff. *See* Milord Dec., Ex. D., p. 48:14-15.

18.     Plaintiff spoke with Dr. Pascale Kerlegrand ("Dr. Kerlegrand") and alleged that her left hand was injured as a result of the incident. *See* Milord Dec., Ex. D., p. 49:1-6.

19.     The curtains within the room where Plaintiff's hand was observed were not closed and another nurse was present in that space. *See* Milord Dec., Ex. D., p. 52:1-8; 53:3-10.

20.     Two nurses entered and exited the area where Plaintiff's hand was being looked at by Dr. Kerlegrand. *See* Milord Dec., Ex. D., p. 54:1-3; p. 62:4-20.

21.     Part of the room was the nurse supervisor's office. *See* Milord Dec., Ex. E., p. 38:5-25.

22.     Dr. Kerlegrand examined Plaintiff's hand. *See* Milord Dec., Ex. E., p. 14:-2-6.

23.     Plaintiff was fully clothed during the brief examination of Plaintiff's hand. *See* Milord Dec., Ex. D., p. 55:25; 56:1-5.[1]

24.     Plaintiff claims she did not see any cameras or recording devices within the room. *See* Milord Dec., Ex. D., p. 56:6-9.

25.     On the date of incident, August 4, 2016, Dr. Kerlegrand was unaware of any policies or procedures at the Port Authority concerning cameras or recording devices at OMS; was unaware of the use of a security camera at 233 Park Avenue South or that her looking at Plaintiff's hand was being recorded. *See* Milord Dec., Ex. E., p. 20:2-22.

26.     Plaintiff pursued a criminal case against one of her supervisors in New Jersey. *See* Milord Dec., Ex. D., p. 64:15-21.

27.     During discovery in the criminal case, Plaintiff learned about the video recording of her hand. *See* Milord Dec., Ex. D., p. 74:2-25; 75:1-21.

28.     Dr. Kerlegrand became aware of the video recording in March 2017. *See* Milord Dec., Ex. E., p. 21:3-7.

29.     Dr. Kerlegrand was informed that the subject camera was installed to ensure that no one was stealing medication from the medicine cabinet located on the wall in the room. *See* Milord Dec., Ex. E., p. 28:9-12.

30.     Moving forward Dr. Kerlegrand was informed that there were no more cameras in this area. *See* Milord Dec., Ex. E., p. 35:13-17; 37:13-16.

31.     Dr. Kerlegrand testified at the criminal proceeding. *See* Milord Dec., Ex. E., p. 18:16-19:12.

---

[1] This was not the entirety of Plaintiff's medical examination. Plaintiff underwent x-rays of her left hand within another room of OMS which was not recorded/captured on video.

32.     In 2016, Boss Systems was responsible for the installation of security systems at the Port Authority's space at 233 Park Avenue South. *See* Milord Dec.*,* Ex. F., p. 14:10-14.

33.     The only cameras fixed at Port Authority locations are security cameras, the purpose of which is to monitor access and egress from office spaces, elevators, lobbies, entrances to offices, exits and stairwells. *See* Milord Dec.*,* Ex. F., p. 16:19-25; 17:1-6. There were no other cameras within the examination rooms/spaces of OMS, other than the camera at issue. *See* Milord Dec.*,* Ex. F., p. 28:12-24.

34.     Security camera footage is stored on localized recorders for 30 days of which the Security Equipment Contractor is responsible for the operation of those localized recorders. *See* Milord Dec.*,* Ex. F., p. 18:8-19.

35.     Sometimes footage is merely recorded, in other instances footage is recorded and monitored, such as entrances and exits. *See* Milord Dec.*,* Ex. F., p. 19:2-18.

36.     Footage is not subject to any facial recognition technology or any other technology. *See* Milord Dec., Ex. F., p. 20:2-10.

37.     When videos are requested, they must be approved by the Inspector General. Thereafter, videos are provided to whomever the Inspector General directs that video be sent to. Even requests from law enforcement agencies are directed to the Inspector General for approval. *See* Milord Dec.*,* Ex. F., p. 21:3-7; 23:17-23.

38.     OMS occupied this space at 233 Park Avenue South since 2002. The request from OMS to monitor the drug/medication cabinet in that room was to increase security on that cabinet. *See* Milord Dec., Ex. F., p. 32:3-22.

39.     The Operations Services Department maintains a log of every request made to review security camera footage and a search of that log revealed that – other than this one request

for Plaintiff's criminal case – there were no other requests made for footage from the camera at issue in this case during the period of 2002, the date that the 233 Park Avenue South building went into use, through the date that the Port Authority's OMS vacated the premises.  *See* Milord Dec., Ex. F.*,* p. 41:8-25; 42:2-8.

40.     Thus, the only way to view any footage or obtain any information from the camera at issue was through a request made to the Operations Services Department either by Office of the Inspector General or approved by the Office of the Inspector General. *See* Milord Dec., Ex. F, p. 13:4-13; 21:3-7; 23:17-23.

Dated: May 3, 2021

PORT AUTHORITY LAW DEPARTMENT
*Attorneys for Defendant*
*THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY,*

By:     /s/ Sandy Milord
        4 World Trade Center, 24th Fl.
        150 Greenwich Street
        New York, New York 10007