UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHARLENE TALARICO,
Plaintiff,

-v-

THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY,
Defendant.

18-CV-909 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Charlene Talarico brings this action against the Port Authority of New York and New Jersey ("Port Authority") under 42 U.S.C. § 1983, alleging that the clandestine recording of a medical examination of her hand in the Port Authority's Office of Medical Services ("OMS") violated her Fourth and Fourteenth Amendment rights. The Port Authority moves for summary judgment. For the reasons that follow, the Port Authority's motion is granted.

## I. Background

The following facts are undisputed. Talarico worked as a senior administrative secretary for the Port Authority Technical Center within its Chief Security Office. (*See* Dkt. No. 83 ¶ 6.) The Port Authority was and is a body corporate and politic, created by compact between the states of New York and New Jersey, and recognized and endorsed by Congress. (*See* Dkt. No. 83 ¶ 5.)

On August 4, 2016, Talarico and one of her supervisors got into an altercation. (*See* Dkt. No. 83 ¶¶ 13–14.) During this altercation, the supervisor removed Talarico's cellphone from her hand, which Talarico alleges injured her hand. (*See* Dkt. No. 83 ¶ 14.) Because of this alleged injury, Talarico visited the OMS, where a doctor examined her hand. (*See* Dkt. No. 83 ¶¶ 17, 22.) The doctor's initial examination of Talarico's hand took place in a room that also served as

a nurse supervisor's office.  (*See* Dkt. No. 83 ¶ 21.)  Unbeknownst to Talarico and the doctor who examined her hand, this initial examination was clandestinely recorded by a security camera installed within the room.  (*See* Dkt. No. 83 ¶¶ 24–25.)  The camera records only a portion of the room where Talarico had her examination, and a curtain within the room, when drawn, blocks the view of the camera.  The Port Authority purportedly installed this camera at the request of personnel within the medical department to monitor potential theft of medication from a medicine cabinet.  (*See* Dkt. No. 89 ¶¶ 7–8.)  The footage of Talarico's examination from this security camera, filed under seal, does not contain audio, and mostly depicts Talarico and the doctor talking.  At one point, the doctor physically examines Talarico's hands and demonstrates different hand movements that Talarico then attempts to replicate.  Before leaving the room, the doctor gives Talarico an ice pack for her hand.

Talarico filed this action on February 1, 2018, asserting that the recording of the medical examination of her hand violated her Fourth Amendment right to be free of unreasonable searches and her privacy rights under the Fourteenth Amendment.[1]  (*See* Dkt. No. 1.)  Talarico contends that the Port Authority is liable under 42 U.S.C. § 1983 because its practice of using security cameras to make recordings is what led to the deprivation of her constitutional rights.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  The Port Authority moved for summary judgment on May 3, 2021, asserting that Talarico did not experience a constitutional deprivation and disputing *Monell* liability.  (*See* Dkt. No. 79.)

---

[1] Talarico also brought state-law claims, claims for punitive damages, and class actions claims in her original complaint.  The Court dismissed her state-law claims and claims for punitive damages in an earlier Opinion and Order, *see Talarico v. Port Auth. of N.Y. & N.J.*, 367 F. Supp. 3d 161, 174 (S.D.N.Y. 2019).  Following discovery, Talarico's counsel acknowledged to the Court that what happened to her was a "one-off" occurrence, *see* Dkt. No. 86 at 3, and did not seek class certification.

## II. Legal Standard

A party is entitled to summary judgment if it can "show[] that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is "material" if "it might affect the outcome of the suit under the governing law." *Hurley v. Tozzer, Ltd.*, No. 15 Civ. 2785, 2018 WL 1087946, at *1 (S.D.N.Y. Feb. 26, 2018) (quoting *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002)). The party moving for summary judgment bears the burden of showing that no genuine dispute of material fact exists, *id.*, and in assessing whether the movant has carried this burden, a court "must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his or her favor," *Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.*, 458 F. Supp. 2d 160, 166 (S.D.N.Y. 2006).

## III. Discussion

The Court first considers whether Talarico experienced a deprivation of her Fourth or Fourteenth Amendment rights. Because the Court concludes that whether Talarico experienced a violation of her privacy rights under the Fourteenth Amendment cannot be decided at the summary judgment stage, the Court then considers whether the Port Authority is liable for a potential violation of Talarico's Fourteenth Amendment rights.

### A. Constitutional Deprivation

#### 1. Fourth Amendment

A search occurs when the government violates an individual's reasonable expectation of privacy. *See Katz v. United States*, 389 U.S. 347, 351 (1967). Whether Talarico had a reasonable expectation of privacy hinges on whether she "exhibited an actual (subjective) expectation of privacy" and if her subjective expectation was "one that society is prepared to

recognize as reasonable." *United States v. Knotts*, 460 U.S. 276, 281 (1983) (internal quotation marks omitted). For individuals in hospital settings, courts in this circuit and elsewhere have held that they generally do not have an objectively reasonable expectation of privacy. *See, e.g.*, *Sparks v. Seltzer*, 607 F. Supp. 2d 437, 442–43 (E.D.N.Y. 2009), *aff'd*, 380 F. App'x 26 (2d Cir. 2010) (holding that "under Fourth Amendment jurisprudence, patients cannot be said to have a reasonable expectation of privacy in a hospital visiting room which may be entered by anyone during a visit and which indeed is used by more than one patient at a time for visits"); *United States v. Franklin*, 64 F. Supp. 2d 435, 439 (E.D. Pa. 1999) ("We seriously doubt that the defendant had any reasonable expectation of privacy in the hospital emergency room which he shared with all the medical personnel.").

The logic undergirding these opinions — that other patients or hospital personnel frequently enter hospital rooms while an individual is inside being treated, meaning that the individual cannot reasonably expect privacy — applies here. Talarico was in a room within the OMS, which the doctor who examined her described as an "emergency room" (*see* Dkt. No. 84-3 at 12:18–25). Talarico does not contest that nurses could enter the room. Indeed, the room she was in also served as a nurse supervisor's office. (*See* Dkt. No. 84-3 at 38:24–39:5.) Talarico insists that her expectation of privacy was reasonable because the room had a curtain that partitioned the area where she was being treated from the rest of the room. (*See* Dkt. No. 84-3 at 39:3–5.) Yet the footage shows that the curtains were not drawn around Talarico, a fact that she admitted in her deposition (*see* Dkt. No. 81-4 at 53), undermining both whatever subjective expectation of privacy she had and the objective reasonableness of any such expectation. The Court thus concludes, based on the undisputed facts, that the recording of her medical examination did not violate her Fourth Amendment rights.

### 2. Substantive Due Process Right to Privacy[2]

Though substantive due process categorically protects privacy in medical information, *see Hancock v. County of Rensselaer*, 882 F.3d 58, 66–67 (2d Cir. 2018), "the constitutional right to privacy is not absolute," *see id.* at 65. Rather, "[a] constitutional violation only occurs when the individual's interest in privacy outweighs the government's interest in breaching it." *Id.* Here, where an executive action is alleged to have infringed constitutionally protected privacy rights, "a plaintiff must show not just that the action was literally arbitrary, but that it was arbitrary in the constitutional sense." *O'Connor v. Pierson*, 426 F.3d 187, 203 (2d Cir. 2005) (internal quotation marks omitted). "[O]nly the most egregious official conduct . . . that shocks the conscience[] will subject the government to liability." *Id.* Whether an executive action shocks the conscience depends on "the state of mind of the government actor and the context in which the action was taken." *Id.*

The Second Circuit's application of this "shocks the conscience" interest-balancing analysis in *O'Connor v. Pierson* is particularly instructive here. In *O'Connor*, the Second Circuit held that it could not be decided at the summary judgment stage whether a board of education requirement that a teacher had to turn over his medical records to be reinstated shocked the conscience. *See O'Connor*, 426 F.3d at 203–04. The board of education's proffered motive for the requirement — wanting the superintendent to directly review the medical records before reinstating the teacher — was directly contradicted by the superintendent's testimony in a deposition, casting doubt on the board of education's true motive. *See id.* Since the *O'Connor*

[2] The Port Authority argues, for the same reasons it did at the motion to dismiss stage, that the Court should dismiss Talarico's Fourteenth Amendment claim as duplicative of her Fourth Amendment claim. The Court again rejects this argument for the reasons it previously explained. *See Talarico*, 367 F. Supp. 3d at 170.

court could not "conclude definitively that the Board acted without culpable intent toward [the teacher]," it vacated the district court's grant of summary judgment to the board of education. *Id.* at 203.

Likewise, the Court here cannot conclude definitively that the Port Authority acted without culpable intent toward Talarico. The Port Authority offered testimonial evidence that it had installed the camera in 2003 to monitor any potential theft of medication from a medicine cabinet. (*See* Dkt. No. 89 ¶ 8.) Yet Dr. Kerlegrand testified in her deposition that medications were not kept in the cabinet, obviating the Port Authority's proffered justification for the camera. (*See* Dkt. No. 84-3 at 27:14–29:03.) From this record, it is unclear whether the Port Authority's installation and continued use of a hidden camera to make recordings — in a room where Talarico's medical examination, and potentially various others' medical examinations (*see* Dkt. No. 84-3 at 26), took place — was for a constitutionally permissible purpose that outweighed Talarico's right to privacy.

The Port Authority's focus on the relatively weak privacy interest Talarico had in the medical examination of her hand misses the mark. To be sure, the Port Authority is correct on this point — a sprained right hand is a relatively minor condition, there is no stigma attached to having a sprained hand, and Talarico discussed her sprained hand with others outside of OMS. *See Hancock*, 882 F.3d at 67 (discussing factors to consider in evaluating the strength of a right to privacy over medical information). But the governmental infringement of a privacy right, even one that is relatively weak like the one here, must still have a valid justification. *See id.* at 67. And the Port Authority points to no direct evidence of medication being kept in the cabinet to support its practice of creating recordings in a room of the OMS. Because there is a genuine dispute over a material issue — why the Port Authority made these recordings — the Court

cannot decide at the summary judgment stage whether the Port Authority violated Talarico's right to privacy.

**B. *Monell* Liability**

"It is axiomatic that municipalities cannot be held liable pursuant to § 1983 on a *respondeat superior* theory." *Betts v. Shearman*, No. 12 Civ. 3195, 2013 WL 311124, at *15 (S.D.N.Y. Jan. 24, 2013) (citing *Monell*, 436 U.S. at 690).[3] Instead, to hold a municipality liable under § 1983, a plaintiff must show that a "municipal policy or custom . . . caused [her] injuries . . . . [and] a causal connection — an 'affirmative link' — between the policy and the deprivation of [her] constitutional rights." *Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985). In the absence of an explicit enactment of a policy or custom, "a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (internal quotation marks omitted). "[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (1995).

Talarico concedes that this case does not involve the explicit enactment of a policy (*see* Dkt. No. 85 at 6) or any widespread and pervasive custom of recording medical examinations in OMS. Besides in the room where Talarico had her examination, which doubled as a nurse supervisor's office, there is no evidence of cameras in any other room of OMS. Talarico also does not offer a single other instance of the Port Authority recording a medical examination.

---

[3] As a bi-state agency, *Monell* has been found applicable to the Port Authority. *See, e.g.*, *Mack v. Port Auth. of N.Y. & N.J.*, 225 F. Supp. 2d 376 (S.D.N.Y. 2002).

There is, admittedly, evidence suggesting that other medical examinations had taken place in the room where the doctor examined Talarico's hand (*see* Dkt. No. 84-3 at 26), creating the potential for the security camera to record these past examinations. This potential would hinge both on these other examinations happening within the view of the camera, which did not record the entire room, and the curtain within the room not being fully drawn so that the view of the camera was unobstructed. But the *potential* for an invasion of privacy, on its own, is not a constitutional violation. *See, e.g.*, *Carpiniello v. Hall*, No. 07 Civ. 1956, 2010 WL 987022, at *4–5 (S.D.N.Y. Mar. 17, 2010); *DeVittorio v. Hall*, 589 F. Supp. 2d 247, 257 (S.D.N.Y. 2008), *aff'd*, 347 F. App'x 650 (2d Cir. 2009). Because Talarico has not established any policy or custom connected to her alleged constitutional violation, the Port Authority is not liable under *Monell* as a matter of law. Its motion for summary judgment therefore must be granted.

## IV. Conclusion

For the foregoing reasons, the Port Authority's motion for summary judgment is GRANTED.

The Clerk of Court is directed to close the motion at Docket Number 79 and to close the case.

SO ORDERED.

Dated: February 23, 2022
New York, New York

J. PAUL OETKEN
United States District Judge